06-0032-ag
Mendez v. Holder

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2006

(Argued: June 12, 2007                                      Decided: May 8, 2009 )

Docket No. 06-0032-ag

JUAN MANUEL MENDEZ,

*Petitioner*,

− v. −

ERIC H. HOLDER JR.,[1] ATTORNEY GENERAL,
UNITED STATES DEPARTMENT OF JUSTICE,

*Respondents*.

Before: McLAUGHLIN, CALABRESI, and SOTOMAYOR, *Circuit Judges*.

Petition for review of the Board of Immigration Appeals' decision summarily affirming an Immigration Judge's denial of cancellation of removal on the grounds that Petitioner had not demonstrated that his removal would cause "exceptional and extremely unusual hardship" to his

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder Jr. is automatically substituted for former Attorney General Alberto Gonzales as a respondent in this case.

United States citizen children. 8 U.S.C. § 1229b(b)(1)(D). Under our decision in *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 329 (2d Cir. 2006), that the REAL ID Act restores our jurisdiction to review "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D), and our decision in *Barco-Sandoval v. Gonzales*, 516 F.3d 35 (2d Cir. 2008), that we can review the determination of whether "exceptional and extremely unusual hardship" is present in those rare cases where a BIA decision rests on fact-finding "which is flawed by an error of law," *id*. at 40, we hold that the BIA's decision in this case must be remanded because significant evidence was overlooked and the record was mischaracterized to an extent amounting to errors of law. Therefore, the petition is GRANTED, and the case is REMANDED to the BIA for a reconsideration of Petitioner's claims absent these errors.

MARTIN L. ROTHSTEIN, Barst & Mukamal, LLP (Dan Lundy, *on the brief*), New York, N.Y., *for Petitioner*.

JENNIFER PAISNER, Office of Immigration Litigation, United States Department of Justice, Civil Division, Washington, D.C., *for Respondents*.

PER CURIAM:

Petitioner Juan Manuel Mendez, a native and citizen of Mexico, seeks review of a decision of the Board of Immigration Appeals ("BIA") summarily affirming a decision of an Immigration Judge ("IJ"), which denied Mendez's application for cancellation of removal. *In re Juan Manuel Mendez*, No. A78 428 394 (B.I.A. Dec. 9, 2005), *aff'g* No. A78 428 394 (Immig. Ct. N.Y. City Sept. 28, 2004). The IJ denied Mendez's petition on the grounds that he had not demonstrated that his removal would result in "exceptional and extremely unusual hardship" to

his United States citizen children. 8 U.S.C. § 1229b(b)(1)(D).

Petitioner argues that the IJ erred as a matter of law by applying the wrong standard for determining whether the hardship caused by his removal would be "exceptional and extremely unusual." Our Circuit's precedent is that "exceptional and extremely unusual hardship" determinations are generally discretionary judgments that we lack jurisdiction to review, *De La Vega v. Gonzales*, 436 F.3d 141, 145-46 (2d Cir. 2006), unless they raise "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D); *accord Barco-Sandoval v. Gonzales*, 516 F.3d 35, 38-39 (2d Cir. 2008). Notwithstanding these precedents, Petitioner asserts that we have jurisdiction to review his claim regarding the construction and application of the hardship standard, arguing that "so far as *De La Vega* holds that hardship determinations are discretionary, that holding is based on inapplicable reasoning and case law regarding a *previous version* of the Cancellation statute, which differs in critical ways from the current one."

We disagree with Petitioner that we can disregard the limitations set forth in *De La Vega* and *Barco-Sandoval*, and we adhere to our holdings in these cases that we cannot review the accuracy of an IJ's fact-finding or the wisdom of his discretion. Nevertheless, we conclude that Petitioner has raised questions of law that we have jurisdiction to consider, *see Barco-Sandoval*, 516 F.3d at 39, and, upon doing so, we hold that the BIA, which summarily affirmed the IJ's decision, committed errors of law in denying Petitioner's eligibility for cancellation of removal. Consequently, we remand the petition to the BIA for consideration of whether, absent such errors, a hardship determination is appropriate in this case.

## BACKGROUND

Because the agency has not questioned Petitioner's credibility, we take the facts asserted

-3-

by him to be true. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271-72 (2d Cir. 2005) (holding that, where there is no adverse credibility determination in the decision being reviewed by this Court, we assume that the petitioner is credible). Petitioner entered the United States in 1989, at age fifteen, and has lived in this country ever since. In 1998, he married; his wife is also present in the United States without documentation. Petitioner and his wife have two children: their son, Jesus Manuel, was born in 1992, and their daughter, Daisy, was born in 1999. Both children are United States citizens.

Petitioner's daughter suffers from severe asthma. Petitioner testified that she has about twenty-five asthma attacks a year and that her condition requires the use of a home nebulizer as well as an inhaler. She also requires regular visits to the emergency room for serious attacks.

Shortly after he was born, Petitioner's son was diagnosed with Grade II Vesicoureteral Reflux. This disease causes urine to reflux from the bladder back to the kidneys and liver, causing staph infections, scarring, and tissue damage. Ultimately, the condition can lead to kidney or liver failure. Jesus received treatment for this condition until age seven, at which point tests showed that his kidneys were normal. He must see a specialist every year, however, to ensure that there are no recurrences or lasting effects.

Petitioner testified that there are "not many jobs available" in the part of Mexico that he is from, and that his relatives would be unable to support him and his family if he returned. As a result, he would be unable to pay for his children's medical care or education there. Moreover, there is no doctor in his village in Mexico, and he would have to pay to travel to another city whenever one of his children needed medical care. According to Petitioner, the region of Mexico in which his village is located has few doctors and even fewer specialists. He was uncertain

whether the medications for his daughter's asthma would be available there, but he was certain that, if they were, they would be "very expensive."

Additionally, Petitioner's children are unfamiliar with Mexican culture and not fully comfortable speaking Spanish. Petitioner testified that his son is in an honors program and wants to be a lawyer, a doctor, or a police officer. In Mexico, Petitioner did not think he would be able to pay for the education necessary for his son to pursue these fields. In short, Petitioner concluded that relocating to Mexico would be a "disaster" for his children.

The Immigration and Naturalization Service[2] served Petitioner with a Notice to Appear on June 10, 2002. Petitioner conceded removability and applied for cancellation of removal. The IJ denied the application, finding Petitioner ineligible for relief, and the BIA summarily affirmed.

**DISCUSSION**

In order to demonstrate eligibility for cancellation from removal, Petitioner must show that he:

> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
> (B) has been a person of good moral character during such period;
> (C) has not been convicted for an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title . . . ; and
> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1). The Government stipulated that Petitioner meets the first three requirements. Accordingly, the only contested issue before the agency was whether Petitioner

---

[2] The Immigration and Naturalization Service ceased to exist in 2003. The functions at issue here are now performed by the Bureau of Citizenship and Immigration Services, within the Department of Homeland Security. *See* 6 U.S.C. § 271(b).

demonstrated that his removal would result in exceptional and extremely unusual hardship to his children.

The IJ found that it would not. She wrote that, "[w]hile it is clear from the evidence of record that the respondent's children will, in fact, suffer a hardship, one which might even be characterized or classified as an extreme hardship, the Court finds that there is insufficient evidence on which the Court can conclude that this hardship to his children would be exceptional and extremely unusual." The BIA summarily affirmed.

Under 8 U.S.C. § 1252(a)(2)(B)(i), this Court lacks jurisdiction to review "any judgment regarding the granting of relief under . . . [8 U.S.C. § 1229b]." Notwithstanding this provision, Petitioner contends that "8 U.S.C. § 1252(a)(2)(B) does not strip courts of jurisdiction to review nondiscretionary decisions regarding an alien's *eligibility* for the relief specified in 8 U.S.C. § 1252(a)(2)(B)(i)." *Sepulveda v. Gonzales*, 407 F.3d 59, 62-63 (2d Cir. 2005) (emphasis added). That is, "[o]btaining . . . cancellation of removal is a two-step process. First, an alien must prove eligibility by showing that he meets the statutory eligibility requirements. Second, assuming an alien satisfies the statutory requirements, the Attorney General in his discretion decides whether to grant or deny relief." *Rodriguez v. Gonzales*, 451 F.3d 60, 62 (2d Cir. 2006) (per curiam) (citations omitted). He argues that "[b]ecause these two stages are distinct, we have jurisdiction to review whether the BIA correctly determined that the alien was *eligible* for" cancellation of removal, *id.*, but we lack jurisdiction at the second stage to review the Attorney General's decision to grant or deny relief, made entirely in his discretion. *See also INS v. St. Cyr*, 533 U.S. 289, 307 (2001) (recognizing the traditional distinction "between eligibility for discretionary relief, on the one hand, and the favorable exercise of discretion, on the other

hand").

Petitioner points out that, based on this analysis, we have previously held that we retain jurisdiction to review certain agency determinations regarding two of the four eligibility requirements for cancellation of removal: (a) that an alien has not been convicted of certain crimes, *see Rodriguez*, 451 F.3d at 62-63; and (b) that an alien "has been a person of good moral character," *see Sepulveda*, 407 F.3d at 62-64.[3] We have also intimated, but not yet held, that we have jurisdiction to review the third requirement – that an alien meets certain physical presence conditions. *See id.* at 63. Petitioner contends that we broke from these holdings in *De La Vega* when we ruled that we lack jurisdiction to review the last remaining eligibility requirement, "exceptional and extremely unusual hardship," and wrongly concluded that such determinations are inherently discretionary judgments. *See* 436 F.3d at 145-46; *see also Barco-Sandoval*, 516 F.3d at 38-39 (reaffirming *De La Vega* as binding law).

Petitioner asserts that there is no compelling reason to differentiate the "exceptional and extremely unusual hardship" determination from the other eligibility requirements. He claims that the plain language of the cancellation of removal statute suggests no difference between the four requirements, and that there is no compelling argument why, for example, the definition of "physical presence" or "good moral character" is more a question of statutory construction than

---

[3] This Court has not yet decided whether it has jurisdiction to review the agency's moral character determinations made under the "catch-all" provision of 8 U.S.C. § 1101(f). *See Zaim-Sassi v. INS*, 201 F. App'x 16, 18 (2d Cir. 2006) ("We are not barred by 8 U.S.C. § 1252(a)(2)(B)(i) from reviewing nondiscretionary good moral character determinations under any of the *per se* categories described in 8 U.S.C. § 1101(f). We have not determined whether we have jurisdiction to review good moral character determinations made under the "catch-all" provision of 8 U.S.C. § 1101(f) . . . .") (citation omitted).

the definition of "exceptional and extremely unusual hardship."[4]  Likewise, Petitioner argues that if the BIA were to deny an alien's petition, not because it deemed the hardship to, say, the alien's adoptive mother insufficiently serious, but because it determined that an adoptive mother was not a "parent" within the meaning of 8 U.S.C. § 1229b(b)(1)(D), we would have jurisdiction to question the agency's statutory interpretation.  *See Jun Min Zhang v. Gonzales*, 457 F.3d 172, 180 (2d Cir. 2006) (Calabresi, J., concurring).  This, Petitioner claims, demonstrates that as to some parts of the last eligibility requirement for cancellation of removal, we have the same authority to review that we have exercised with respect to the other three requirements.

Petitioner asserts that, in comparison with hardship requirements found in other sections of the INA, the language for cancellation of removal suggests that we have jurisdiction here.  The

---

[4] While Petitioner concedes that an "exceptional and extremely unusual hardship" determination is necessarily less determinate than other eligibility requirements for cancellation of removal — for example, whether an alien has been physically present in the United States for ten years — he contends that this difference does not counsel for no review, but for more deferential review.  He notes that the general standard for when an action is "committed to agency discretion by law" under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), is whether there is "no law to apply," *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (internal quotation marks omitted), and that the Supreme Court has defined a discretionary act as one in which the individual authorized to act "must exercise his authority according to his own understanding and conscience," *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954).  Certainly, Petitioner argues, there is law to apply in reviewing a hardship determination, as evidenced by the BIA's own treatment of hardship as a legal standard.  *See, e.g.*, *In re A-S-B-*, 24 I. & N. Dec. 493, 497 (BIA 2008) (explaining that the BIA reviews an IJ's factual findings for clear error, but reviews *de novo* the question of whether those facts support a conclusion that the hardship rises to the required level); *see also Bd. of Immigration Appeals: Procedural Reforms To Improve Case Management*, 67 Fed. Reg. 54878, 54890 (Aug. 26, 2002) (announcing that the BIA may review hardship determinations for cancellation of removal *de novo* as a question of law).  In short, Petitioner contends that while a hardship determination may entail some discretion on the part of the agency, the decision is not discretionary in the sense that it is committed to the discretion of the Attorney General.  *See, e.g.*, *Zhao Quan Chen v. Gonzales*, 492 F.3d 153, 154 (2d Cir. 2007) (per curiam) (denial of motion to reopen or reconsider reviewed for abuse of discretion); *see also Pedreros v. Keisler*, 503 F.3d 162, 164 (2d Cir. 2007) (per curiam) (denial of continuance reviewed for abuse of discretion).

hardship determination for cancellation of removal requires that an alien "establish[] that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D). In contrast, other sections of the INA require that an alien establish extreme hardship "in the opinion of the Attorney General" or "to the satisfaction of the Attorney General." This language was used for suspension of deportation, the predecessor of the current cancellation of removal law. But it was not included with respect to cancellation. *See* 8 U.S.C. § 1254(a)(1) (suspension of deportation) (repealed 1996); 8 U.S.C. § 1182(i)(1) (§ 212(i) relief).

Petitioner points to our decision in *Kalkouli v. Ashcroft*, 282 F.3d 202 (2d Cir. 2002) (per curiam), where we held that we lack jurisdiction to review the hardship determination for suspension of deportation *because* the plain language of the provision — "in the opinion of the Attorney General" — "clearly entrusts the decision to the Attorney General's discretion." *Id.* at 204. Petitioner argues that this additional clause, which is now lacking as to cancellation of removal, suggests a significant difference in the statutes and that we should not treat the clause in the other INA hardship provisions as surplusage. *See, e.g.*, *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted)); *Conn. ex rel. Blumenthal v. U.S. Dep't of Interior*, 228 F.3d 82, 88 (2d Cir. 2000) ("[W]e are required to 'disfavor interpretations of statutes that render language superfluous.'" (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992))); *see also Nethagani v.*

*Mukasey*, 532 F.3d 150, 154-55 (2d Cir. 2008) (holding that "when a statute authorizes the Attorney General to make a determination, but lacks additional language specifically rendering that determination to be within his discretion," the statute is not one that "abate[s] our power to review the decision").

Finally, Petitioner contends that any doubt should strongly favor a construction permitting review because of the "strong presumption in favor of judicial review of administrative action," *St. Cyr*, 533 U.S. at 298, and the "'longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien,'" *id.* at 320 (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987)).

Petitioner has presented substantial arguments. Were we operating on a clean slate, we would be inclined to hold that the question of whether an alien has established "exceptional and extremely unusual hardship" is a determination that we have jurisdiction to review, just as we can review decisions dealing with the other eligibility requirements for cancellation of removal. We are, however, bound by prior decisions of our Court. *See United States v. Snow*, 462 F.3d 55, 65 n.11 (2d Cir. 2006) ("[A] prior decision of a panel of this court binds all subsequent panels 'absent a change in law by higher authority or by way of an in banc proceeding' . . . ." (quoting *United States v. King*, 276 F.3d 109, 112 (2d Cir. 2002))). In *Barco-Sandoval*, this Court held that the determination of whether "exceptional and extremely unusual hardship" is present for the purposes of cancellation of removal is beyond our jurisdiction to review, except in those rare cases where the BIA decision on whether this kind of hardship exists is made "'without rational justification or based on an erroneous legal standard,'" *Barco-Sandoval*, 516 F.3d at 39 (quoting *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 329 (2d Cir. 2006) ("*Xiao Ji Chen II*")), or

rests on fact-finding "which is flawed by an error of law," *id*. 516 F.3d at 40. We therefore find ourselves unable to accept Petitioner's arguments set out above.

We need not decide in this case whether the circumstances concerning the health issues faced by Petitioner's children, considered in light of the questionable availability of medical care for their health needs in the event they return to Mexico with their parents, are so extreme that an agency decision finding no "exceptional and extremely unusual hardship" would be "without rational justification or based on an erroneous legal standard," *Barco-Sandoval*, 516 F.3d at 39 (internal quotation marks omitted), under the standards the BIA has established for determining whether an application for cancellation of removal demonstrated an "exceptional and extremely unusual hardship." *See In re Gonzalez Recinas*, 23 I. & N. Dec. 467 (BIA 2002); *In re Andazola-Rivas*, 23 I. & N. Dec. 319 (BIA 2002); *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56 (BIA 2001).

Instead, we dispose of this petition by noting that the agency's decision rests on fact-finding "which is flawed by an error of law." *Barco-Sandoval,* 516 F.3d at 40. For example, although Petitioner testified that his nine-year-old daughter has around twenty-five asthma attacks each year, several of which require emergency visits to the hospital; that she must use a home nebulizer, a specialized piece of equipment, in addition to an ordinary inhaler; and that doctors do not expect her to outgrow her asthma, the IJ did not address any of these factors. Furthermore, the IJ stated incorrectly that "[t]he only evidence respondent has offered regarding this [asthma] is a letter from Dr. Hector Florman of the National Pediatric Center which only indicates that the children have been treated on multiple occasions with respiratory infections" and concluding that "[t]here's nothing in the record to suggest that the asthma suffered . . . is

-11-

severe in any way."[5]

In addition, although the IJ concluded that Petitioner's son, who suffers from Grade II Vesicoureteral Reflux — a condition that may lead to kidney or liver failure — was "cured or . . . certainly in remission," the IJ did not address the fact that the son's yearly examinations are highly specialized and that Petitioner's area of Mexico, if he and his family are removed, has few doctors — let alone kidney specialists — and that Petitioner testified that he will not be able to travel to see specialized doctors or to pay for treatment.

We readily acknowledge that the agency does not commit an "error of law" every time an item of evidence is not explicitly considered or is described with imperfect accuracy, but where, as here, some facts important to the subtle determination of "exceptional and extremely unusual hardship" have been totally overlooked and others have been seriously mischaracterized, we conclude that an error of law has occurred.[6] The IJ did not make an adverse credibility determination, and we are not confident that, after taking the overlooked evidence into account and describing it accurately, the agency would come to the conclusion that Petitioner has not met the standard of "exceptional and extremely unusual hardship." *See, e.g.*, *In re Gonzalez Recinas*, 23 I. & N. Dec. at 470 ("[T]he hardship standard is not so restrictive that only a handful of applicants, *such as those who have a qualifying relative with a serious medical condition*, will

---

[5] It is possible that the IJ's reference to "the only evidence" is intended as a reference to the only *medical* evidence, and that the IJ discounted the Petitioner's own characterizations of his children's medical state as inexpert and marked by an expected parental solicitude and anxiety. Indeed, in the recitation of facts, the IJ explicitly sets forth that Petitioner testified as to the approximately twenty-five asthma attacks per year and the use of a home nebulizer. But the bare text of the holding leaves open an inference of error.

[6] *But see* footnote 5, *supra*.

qualify for relief." (emphasis added)).

## CONCLUSION

Accordingly, we grant this petition and remand the case to the BIA to evaluate — cleansed of these errors — whether Petitioner established that his citizen children will suffer "exceptional and extremely unusual hardship" in light of the standards the BIA itself established in *In re Monreal-Aguinaga* and subsequent cases.[7]

The petition for review is GRANTED, and the case is REMANDED to the BIA for consideration consistent with this opinion.

---

[7] On remand, should the BIA deem it useful to develop further standards clarifying the "exceptional and extremely unusual hardship" requirement, such further development should be up to it. *Cf. Bd. of Immigration Appeals: Affirmance Without Opinion, Referral for Panel Review, and Publication of Decisions as Precedent*, 73 Fed. Reg. 34654, 34,660 (proposed June 18, 2008) (to be codified at 8 C.F.R. pt. 1103) (commending the Court's decision to remand cases to the BIA for further standards "rather than undertaking to establish . . . legal standards as a matter of first impression").